**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BURBERRY LIMITED; BALENCIAGA SA; BOTTEGA VENETA S.R.L.; GIANNI VERSACE, S.R.L.; HERMÈS INTERNATIONAL; LOUIS VUITTON MALLETIER; LUXURY GOODS INTERNATIONAL (L.G.I.) S.A.; MICHAEL KORS, L.L.C.; MONCLER, S.P.A.; TIMBERLAND, a division of VF OUTDOOR, LLC; TBL LICENSING LLC; and YVES SAINT LAURENT SAS, | CIVIL ACTION NO. |
| | 22 CV _____ |
| Plaintiffs, | |
| -against- | |
| VARIOUS JOHN DOES, JANE DOES, and XYZ COMPANIES, | |
| Defendants. | |

## COMPLAINT

Plaintiffs Burberry Limited; Balenciaga SA; Bottega Veneta S.r.l; Gianni Versace, S.r.l.; Hermès International; Louis Vuitton Malletier; Luxury Goods International (L.G.I.) S.A.; Michael Kors L.L.C.; Moncler S.p.A.; Timberland, a division of VF Outdoor LLC; TBL Licensing LLC; and Yves Saint Laurent SAS (all collectively, "Plaintiffs"), through their attorneys, complaining of Defendants, allege as follows:

### STATEMENT OF THE CASE

1.      Plaintiffs seek monetary and injunctive relief against Defendants for numerous causes of action, including but not limited to, (i) trademark counterfeiting, in violation of 15 U.S.C. § 1114; (ii) trademark infringement, in violation of 15 U.S.C. § 1114; (iii) false descriptions/false designations of origin, in violation of 15 U.S.C. § 1125; and (iv) common law trademark infringement and unfair competition.

2.     Certain areas of New York City have long been major distribution hubs for counterfeit goods that are sold throughout the United States.  Wholesale and retail sales of counterfeit goods occur frequently and regularly from locations around the city.  Plaintiffs in this case, and trademark holders in general, have been plagued by the sale and distribution of counterfeit goods at locations all over New York City for years.  To combat this illegal activity and protect their world-famous and valuable names, reputations, and trademarks, Plaintiffs have, at great expense, commenced and led enforcement efforts in and around New York City.  Plaintiffs regularly work with law enforcement in operations against the individuals and entities selling counterfeit goods bearing its trademarks.  Arrests for trademark counterfeiting have been made routinely by the New York City Police Department and by other agencies.  The Mayor's Office of Special Enforcement for the City of New York has conducted numerous enforcement operations against the sellers of counterfeit goods.

## JURISDICTION AND VENUE

3.     These claims arise under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*., particularly under 15 U.S.C. § 1114(1). This Court has subject matter jurisdiction over the claims in this action which relate to trademark counterfeiting and infringement, dilution and false designations of origin and false descriptions pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

4.     This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims alleged by Plaintiffs occurred within New York County in New York State.

## THE PARTIES

6.      Plaintiff Burberry Limited is a corporation duly organized and existing under the laws of the United Kingdom and having an office and principal place of business at Horseferry House, Horseferry Road, London, SW1P 2AW, United Kingdom.  Burberry maintains an office in the United States at 444 Madison Avenue, New York, NY 10022 ("Burberry").

7.      Plaintiff Balenciaga SAS is a French company with its principal place of business located at 40 Rue de Sèvres, Paris, France 75007 ("Balenciaga").

8.      Plaintiffs Bottega Veneta S.r.l. is an Italian corporation with its principal place of business located at Località Conti Maltraverso, 1 36054 Montebello Vicentino (VI) Italy ("Bottega Veneta").

9.      Plaintiff Gianni Versace, S.r.l., formerly known as Gianni Versace, S.p.A., is a company organized under the laws of Italy with its principal place of business at Piazza Einaudi Nr. 4, 20124, Milan Italy ("Versace").

10.      Plaintiff Hermès International is a corporation, organized and existing under the laws of France, having its principal place of business located at 24, rue du Faubourg Saint-Honoré, Paris, France ("Hermès").

11.      Plaintiff Louis Vuitton Malletier is a French company with its principal place of business located at 2 Rue due Pont Neuf, 75001, Paris, France ("LV").

12.      Plaintiff Luxury Goods International (L.G.I.), S.A. is a Swiss company with its principal place of business located at Via Industria, Cadempino, Switzerland 6814.

13.    Plaintiff Michael Kors, L.L.C. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 11 West 42nd Street, New York, NY 10036 ("MK").

14.    Plaintiff Moncler S.p.A. is a company organized under the laws of Italy with its principal place of business at Via Stendhal, 47 Milan, Italy I-20144 ("Moncler").

15.    Plaintiff Timberland, a division of VF Outdoor, LLC, is a Delaware Company with a principal place of business located at 200 Domain Drive, Stratham, New Hampshire 03885.

16.    Plaintiff TBL Licensing LLC, an affiliate of Timberland, is a Delaware Company with a principal place of business located at 200 Domain Drive, Stratham, New Hampshire 03885 (collectively with Timberland, a division of VF Outdoor, LLC, "Timberland").

17.    Plaintiff Yves Saint Laurent SAS is a French company with its principal place of business located at 37, Rue de Bellechasse, Paris, France 75007 ("YSL").

18.    Plaintiffs are informed and believe and thereupon allege that at all times relevant hereto defendants various John Does, Jane Does, and/or XYZ Companies (collectively referred to as "Defendants"), are and have been doing business in the city and State of New York at the following locations: at least one John Doe, Jane Doe, or XYZ Company at 136 Madison Avenue (a/k/a 19 East 31st Street), Suite 553, New York, NY 10016; at least one John Doe, Jane Doe, or XYZ Company at 25 West 31st Street, New York, NY 10001; at least one John Doe, Jane Doe, or XYZ Company at 115 West 29th Street, 7th Floor, Room Across from Elevators to the Right, New York, NY 10001; dozens of John Does, Jane Does, and/or XYZ Companies on Sidewalks on White, Walker, Lispenard, Canal, & Howard Streets from Broadway to Church Street, New York, New York 10013; dozens of John Does, Jane Does, and/or XYZ Companies on Sidewalks on 46th Street to 53rd Street from Broadway to 7th Avenue, New York, New York 10019; dozens of John Does, Jane Does,

and/or XYZ Companies on Sidewalks on 48th Street to 53rd Street along 6th Avenue, New York, New York 10019; and dozens of John Does, Jane Does, and/or XYZ Companies in vehicles parked on Lispenard Street off Broadway, including a Tan Honda Odyssey (Temporary [Paper] TX "Plate" No. NSK 4753), a Green Toyota Minivan (N.Y. License Plate No. JCU 6884), a White Ford Van (Graffiti Covered) (N.Y. License Plate No. KVN-19__[Partial]), and a Grey/Silver Toyota Sienna (N.Y. License Plate No. HSF 2126).

19.    Plaintiffs are informed and believe and thereupon allege that at all times relevant hereto Defendants have purchased, sold, and/or distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks, as defined below in paragraph 25.

20.    Upon information and belief, due to the nature of Defendants and their business practices, the identities of the various John Does, Jane Does, and XYZ Companies are not presently known, and the Complaint will be amended, if appropriate, to include the name or names of said individuals or companies when such information becomes available.

## PLAINTIFFS' ACTIVITIES

21.    Plaintiffs are industry leaders in the design, marketing, and distribution of a variety of merchandise including but not limited to apparel, belts, cosmetics, eyewear, footwear, handbags, jackets, jewelry, perfumes, wallets, and watches bearing Plaintiffs' Federally Registered Trademarks.

22.    For decades, Plaintiffs have developed their reputations and distinctive images across expanding product lines in both domestic and international markets.

23.    Plaintiffs advertise, market, and sell their merchandise through numerous distribution channels including but not limited to exclusive retail stores, department stores, and online through Plaintiffs' websites.

24.     Plaintiffs annually expend millions of dollars advertising their products.

25.     Plaintiffs are the owners of numerous trademark registrations with the United States Patent & Trademark Office, including but not limited to those listed on Exhibit A attached hereto (hereinafter collectively referred to as "Plaintiffs' Federally Registered Trademarks").

26.     Plaintiffs are the exclusive distributors or licensors in the United States of their merchandise, all of which bear one or more of Plaintiffs' Federally Registered Trademarks.

27.     Plaintiffs are responsible for designing and/or licensing, assembling, finishing, marketing and selling in interstate commerce high quality apparel, belts, cosmetics, eyewear, footwear, handbags, jackets, jewelry, perfumes, wallets, watches, and many other products.

28.     Plaintiffs' Federally Registered Trademarks are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065.

29.     Plaintiffs have used Plaintiffs' Federally Registered Trademarks for many years, and in some instances decades, on and in connection with their merchandise.

30.     Plaintiffs' Federally Registered Trademarks identify high quality merchandise originating with Plaintiffs.

31.     Plaintiffs have gone and continue to go to great lengths to protect their names and enforce Plaintiffs' Federally Registered Trademarks.

**DEFENDANTS' COUNTERFEITING & INFRINGING ACTIVITIES**

32.     Upon information and belief, Defendants have counterfeited and infringed, continue to counterfeit and infringe, and threaten to further counterfeit and infringe Plaintiffs' Federally Registered Trademarks by manufacturing, distributing and selling unauthorized merchandise, including but not limited to high quality apparel, belts, handbags, and other accessories. The unauthorized products, which are being manufactured, distributed, and/or sold by Defendants, bear

unauthorized copies of Plaintiffs' Federally Registered Trademarks.  Defendants' counterfeiting and infringing activities constitute unauthorized public display and distribution of products bearing Plaintiffs' Federally Registered Trademarks.

33.     Long after Plaintiffs' use and registration of Plaintiffs' Federally Registered Trademarks, Defendants, on information and belief, commenced the manufacture, distribution, and/or sale of merchandise bearing counterfeits and infringements of Plaintiffs' Federally Registered Trademarks as those trademarks appear on Plaintiffs' products and as shown in Exhibit A to this Complaint.

34.     Upon information and belief, the activities of Defendants complained of herein constitute willful and intentional infringement of Plaintiffs' Federally Registered Trademarks, are in total disregard of Plaintiffs' rights, and were commenced and have continued in spite of Defendants' knowledge that the use of any of Plaintiffs' Federally Registered Trademarks, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiffs' rights.

35.     Use by Defendants of copies of Plaintiffs' Federally Registered Trademarks has been without Plaintiffs' consent, is likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to and does falsely create the impression that the goods sold by Defendants are authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

**A.     *136 Madison Avenue (a/k/a 19 East 31st Street)*
        *Suite 553*
        *New York, NY 10016***

36.     On November 12, 2022, Plaintiffs dispatched an investigator to this location to assess whether or not counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks was being manufactured, distributed, and/or sold.  While at this location, the investigator observed counterfeit merchandise for sale by the Defendant(s) bearing the Federally Registered Trademarks of

Moncler, Timberland, and other brands.   The undercover informant then purchased a pair of Timberland boots for fifty U.S. Dollars ($50) which appeared to be counterfeit.

37.     Upon information and belief, the Defendant(s) at this location continue to manufacture, distribute, and/or sell counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks.

**B.      25 West 31st Street**
**New York, NY 10001**

38.     On November 6, 2022, Plaintiffs dispatched an investigator to this location to assess whether or not counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks was being manufactured, distributed, and/or sold.   While at this location, the investigator bought a case of counterfeit boots bearing the Federally Registered Trademarks of Timberland.  Figure A below is a photograph of the exterior of this location as it appeared on November 6, 2022.   The evidential purchase of a case of counterfeit Timberland boots cost four hundred eighty U.S. Dollars ($480).



*Fig. A: Exterior of 25 West 31st Street*

39.    Upon information and belief, the Defendant(s) at this location continue to manufacture, distribute, and/or sell counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks.

**C.    115 West 29th Street, 7th Floor**
**Room Across from Elevators to the Right**
**New York, NY 10001**

40.    On November 2, 2022, Plaintiffs dispatched an investigator to this location to assess whether or not counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks was being manufactured, distributed, and/or sold.  While in the room described above, the investigator observed counterfeit apparel, handbags, and other accessories for sale bearing the Federally Registered Trademarks of Burberry, Hermès, LV, Versace and YSL. The investigator then made an evidential purchase from this Defendant of counterfeit Burberry, Hermès, and LV handbags and other merchandise for a total cost of four hundred U.S. Dollars ($400).

41.    Upon information and belief, the Defendant(s) at this location continue to manufacture, distribute, and/or sell counterfeit merchandise bearing these Plaintiffs' Federally Registered Trademarks.

**D.    Sidewalks on White, Walker, Lispenard Canal & Howard Streets**
**from Broadway to Church Street**
**New York, New York 10013**

42.    On or about July 17, 2019, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise in the area identified above.  Plaintiffs seized 35 counterfeit items bearing the trademarks of Burberry, Hermès, MK, and other brands.

43.    On or about September 14, 2019, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise in the area identified above.  Plaintiffs seized over 600 counterfeit items bearing the trademarks of Burberry, Hermès, MK, and other brands.

44.     On or about December 10, 2020, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise at the area identified above.  Plaintiffs seized over 400 counterfeit items bearing the trademarks of Burberry, Hermès, and LV.

45.     On or about December 23, 2020, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise at the area identified above.  Plaintiffs seized over 1,200 counterfeit items bearing the trademarks of Burberry, Hermès, and LV.

46.     On or about September 27, 2022, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise in the area identified above.  Plaintiffs seized almost 1,000 counterfeit items bearing the trademarks of Burberry, Hermès, LV, MK, and Versace.

47.     On November 7, 2022 Plaintiffs' dispatched an investigator to this area to assess whether counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks were being manufactured, distributed, and or sold. While in the area described above and outlined in blue in Figure B below, the investigator observed dozens of different vendors offering for sale counterfeit handbags, belts, wallets, sunglasses, hats, apparel, and other merchandise bearing the Federally Registered Trademarks of Balenciaga, Bottega Veneta, Burberry, Hermès, LV, MK, Moncler, Versace, and YSL.  Figure C below are photographs of sidewalk displays at this location as they appeared on November 7, 2022.



***Fig. B: Locations of Canal Street Vendors Outlined in Blue***



***Fig. C: Canal Street Sidewalk Displays of Counterfeit Merchandise as of November 7, 2022***

48.     On November 18, 2022, Plaintiffs' dispatched an investigator to assess whether counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks were still being manufactured, distributed, and/or sold. The investigator observed dozens of different vendors offering for sale handbags, belts, wallets, sunglasses, hats, apparel, and other merchandise bearing

the Federally Registered Trademarks of Balenciaga, Bottega Veneta, Burberry, Hermès, LV, MK, Moncler, Versace, and YSL. Figure D below is a photograph of this location as it appeared on November 18, 2022.



***Fig. D: Street Vendors Observed on Broadway Between Canal & Lispenard Streets as of November 18, 2022***

49.     The investigator made an evidential purchase of a Moncler hat from a street vendor on the corner of Broadway and Lispenard Street, an LV handbag from a street vendor on Broadway and Canal Street, and an Hermès belt from a street vendor on Church Street near Canal Street for four hundred U.S. Dollars ($220.00).

50.     Upon information and belief, the Defendant(s) at this location continue to manufacture, distribute, and/or sell counterfeit merchandise bearing these Plaintiffs' Federally Registered Trademarks.

**E.    *Sidewalks on 46th Street to 53rd Street from Broadway to 7th Avenue***
**    *Sidewalks on 48th Street to 53rd Street Along 6th Avenue***
**    *New York, NY 10019***

51.    On or about November 22, 2019, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise in the area identified above along 6th Avenue.  Plaintiffs seized almost 200 counterfeit items bearing the trademarks of Burberry, Hermès, LV, and MK.

52.    On or about December 10, 2020, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise along 5th Avenue near the area identified above.  Plaintiffs seized almost 400 counterfeit items bearing the trademarks of Burberry, Hermès, and LV.

53.    On or about September 22, 2022, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise at the area identified above from Broadway to 7th Avenue. Plaintiffs seized over 850 counterfeit items bearing the trademarks of Burberry, Hermès, LV, and MK.

54.    On October 27, 2022, Plaintiffs' investigator assisted the New York Police Department's Midtown North Precinct with a criminal seizure against a street vendor on Broadway between 51st and 52nd Streets.  While in this area outlined in blue in Figure E below, Plaintiffs' investigator observed many different street vendors offering counterfeit merchandise for sale bearing the Federally Registered Trademarks of Balenciaga, Burberry, Hermès, LV, Versace, YSL, and other brands.  The New York Police Department seized dozens of counterfeit items bearing the Federally Registered Trademarks of these Plaintiffs.

13



***Fig. E: Locations of Midtown Street Vendors Outlined in Blue***

55.     On November 10, 2022, Plaintiffs' investigator assisted the New York Police Department's Midtown North Precinct with a criminal seizure against a street vendor on 7th Avenue between 47th and 48th Streets.  While in the area outlined in blue in Figure E above, Plaintiffs' investigator observed many different street vendors offering counterfeit merchandise for sale bearing the Federally Registered Trademarks of Burberry, LV, YSL, and other brands.  The New York Police Department seized dozens of counterfeit items bearing the Federally Registered Trademarks of these Plaintiffs.

56.     Upon information and belief, the Defendant(s) at these locations continue to manufacture, distribute, and/or sell counterfeit merchandise bearing these Plaintiffs' Federally Registered Trademarks.

***F.   Street Vendors' Vehicle Storage on Lispenard Off Broadway:***
  ***1.   Tan Honda Odyssey, Temporary (Paper) Texas "Plate" NO. NSK 4753;***
  ***2.   Green Toyota Minivan, NY License Plate NO. JCU 6884;***
  ***3.   White Ford Van (Graffiti Covered), NY License Plate No. KVN-19 (Partial);***
  ***4.   Grey/Silver Toyota Sienna, NY License Plate No. HSF 2126***

57.     On December 23, 2020, certain Plaintiffs previously conducted a civil seizure of counterfeit merchandise at van no. 2, the Green Toyota, identified above.  Plaintiffs seized over 300 counterfeit items bearing the trademarks of Burberry, Hermès, and LV.

58.     On November 18, 2022, Plaintiffs dispatched an investigator to assess whether counterfeit merchandise bearing Plaintiffs' Federally Registered Trademarks were still being manufactured, distributed, and/or sold. While in the area, Plaintiffs' investigator observed street vendors offering for sale and storing merchandise bearing the Federally Registered Trademarks of Burberry, Hermès, and LV. Plaintiffs' investigator also observed these vendors obtaining more counterfeit merchandise from the above-described vehicles located on Lispenard Street off Broadway.

59.     Upon information and belief, the Defendant(s) at this location continue to manufacture, distribute, and/or sell counterfeit merchandise bearing these Plaintiffs' Federally Registered Trademarks.

## FIRST CAUSE OF ACTION
## TRADEMARK COUNTERFEITING
## 15 U.S.C §1114

60.     Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

61.     Defendants have used spurious designations that are identical with, or substantially indistinguishable from, Plaintiffs' Federally Registered Trademarks on goods covered by registrations for Plaintiffs' Federally Registered Trademarks.

62.     Defendants are intentionally and willfully using these spurious designations knowing they are counterfeit in connection with the advertising, sale, offering for sale and distribution of counterfeit goods for their own personal financial gain and such intentional and willful conduct by the Defendants makes this an exceptional case.

63.     Defendants' use of the Plaintiffs' Federally Registered Trademarks to advertise, offer for sale, sell and distribute Defendants' counterfeit products was and is without the consent of Plaintiffs.

64.     Defendants' unauthorized use of Plaintiffs' Federally Registered Trademarks on and in connection with the advertising and sale of counterfeit goods constitutes Defendants' use of Plaintiffs' Federally Registered Trademarks in commerce.

65.     Defendants' unauthorized use of Plaintiffs' Federally Registered Trademarks as set forth above is likely to:

(a)     cause confusion, mistake and deception;

(b)     cause the public to believe that Defendants' counterfeit products are the same as Plaintiffs' products and/or that Defendants are authorized, sponsored or approved by Plaintiffs or that Defendants are affiliated, connected or associated with or in some way related to Plaintiffs; and

(c)     result in Defendants unfairly benefiting from Plaintiffs' advertising and promotion and profiting from the reputation of Plaintiffs and Plaintiffs' Federally Registered Trademarks all to the substantial and irreparable injury of the public, Plaintiffs and Plaintiffs' Federally Registered Trademarks and the substantial goodwill represented thereby.

66.     Defendants' acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

67.     Plaintiffs have no adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of Defendants' acts as aforesaid in an amount not thus far determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

68.     Defendants' wrongful acts of counterfeiting will continue unless enjoined by this Court.

69.     Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

**SECOND CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT**
**15 U.S.C. §1114**

70.     Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

71.     Plaintiffs' Federally Registered Trademarks are fanciful and arbitrary and are associated in the mind of the public with Plaintiffs.

72.     Based on Plaintiffs' extensive advertising, sales and the wide popularity of Plaintiffs' products, Plaintiffs' Federally Registered Trademarks have acquired secondary meaning so that any product and advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product and affiliate of Plaintiffs.

73.     Defendants use Plaintiffs' Federally Registered Trademarks in connection with Defendants' sale, distribution and advertising of their counterfeit and infringing goods.

74.     Defendants' activities as aforesaid constitute Defendants' use in commerce of Plaintiffs' Federally Registered Trademarks.

75.     Defendants have used Plaintiffs' Federally Registered Trademarks without Plaintiffs' consent or authorization. Defendants' use, including the sale and distribution of infringing products in interstate commerce, is likely to cause confusion and mistake in the minds of the public, leading the public to believe that Defendants' products emanate or originate from Plaintiffs, or that Plaintiffs have approved, sponsored or otherwise associated themselves with Defendants, which is untrue.

76.     Defendants have intentionally used Plaintiffs' Federally Registered Trademarks in connection with the offering for sale, sale, and distribution of counterfeit goods, knowing they are the exclusive property of Plaintiffs.

77.     Defendants' conduct is intended to exploit the goodwill and reputation associated with Plaintiffs' Registered Trademarks.

78.     Plaintiffs have no control over the quality of Defendants' counterfeit merchandise. Because of the very real likelihood of confusion as to the source of Defendants' products, Plaintiffs' reputation and valuable goodwill in the Trademarks is at the mercy of Defendants' unscrupulous tactics.

79.     Defendants' activities as aforesaid create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Plaintiffs to use Plaintiffs' Federally Registered Trademarks to advertise, manufacture, distribute, appraise, offer for sale or sell counterfeit products bearing Plaintiffs' Federally Registered Trademarks when Defendants are not so authorized.

80.     Defendants engage in the aforementioned activity with the intent to confuse and deceive consumers into believing that Defendants and the goods they sell are in some way sponsored by, affiliated or associated with Plaintiffs when the Defendants are not.

81.     Defendants' unauthorized use of Plaintiffs' Federally Registered Trademarks as set forth above has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion and profiting from Plaintiffs' reputation and Plaintiffs' Federally Registered Trademarks, to the substantial and irreparable injury of the public, Plaintiffs and Plaintiffs' Federally Registered Trademarks and the substantial goodwill represented thereby.

82.     Defendants' aforesaid acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

83.     Defendants' acts have caused, and will continue to cause, great and irreparable injury to Plaintiffs, and unless such acts are restrained by this Court, they will continue, thereby causing Plaintiffs to continue to suffer great and irreparable injury. Plaintiffs have no adequate remedy at law.

84.     Plaintiffs are informed and believe and thereon allege that Defendants' infringement is both intentional and egregious.

85.     Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

86.     Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

**THIRD CAUSE OF ACTION**
**FALSE DESIGNATIONS OF ORIGIN,**
**FALSE DESCRIPTIONS AND REPRESENTATIONS**
**15 U.S.C. §1125(a)**

87.     Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

88.     Defendants have, in connection with their goods, used in commerce, and continue to use in commerce, Plaintiffs' Federally Registered Trademarks.

89.     Defendants have affixed, applied and used in connection with their sale of goods, false designations of origin and false and misleading descriptions and representations, including

Plaintiffs' Federally Registered Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by Plaintiffs of the goods sold by the Defendants.

90.     Defendants use one or more of Plaintiffs' Federally Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiffs.

91.     Defendants' use of Plaintiffs' Federally Registered Trademarks on the counterfeit goods constitutes false descriptions and representations tending to falsely describe or represent Defendants and Defendants' products as being authorized, sponsored, affiliated or associated with Plaintiffs.

92.     Defendants use one or more of Plaintiffs' Federally Registered Trademarks on counterfeit goods with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high quality reputation of Plaintiffs and to improperly appropriate to themselves the valuable trademark rights of Plaintiffs.

93.     Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' products as those of Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

94.     Defendants' wrongful acts will continue unless enjoined by this Court.

95.     Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

96.     Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

**FOURTH CAUSE OF ACTION**
**FEDERAL TRADEMARK DILUTION**
**15 U.S.C. &1125(c)**

97.     Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

98.     Plaintiffs are the exclusive owners of Plaintiffs' Federally Registered Trademarks listed on Exhibit A attached hereto.

99.     Defendants' use of Plaintiffs' Federally Registered Trademarks on the counterfeit goods they sell constitutes Defendants' commercial use in commerce of Plaintiffs' Federally Registered Trademarks.

100.    Plaintiffs' Federally Registered Trademarks have been used for years, and in some instances decades, and are so globally recognized and associated with Plaintiffs that they are entitled to be recognized as famous and distinctive under 15 U.S.C. §1125(c).

101.    Plaintiffs' Federally Registered Trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with the Plaintiffs and its distinctive reputation for high quality. The purchasing public is likely to attribute to Plaintiffs, Defendants' use of Plaintiffs' Federally Registered Trademarks as a source of origin, authorization and/or sponsorship for the products Defendants sell and further, purchase Defendants' products in the erroneous belief that Defendants are associated with, sponsored by or affiliated with Plaintiffs, when Defendants are not.

102.    Plaintiffs have not authorized or licensed the use of Plaintiffs' Federally Registered Trademarks to Defendants.

21

103.    Defendants' unauthorized use of Plaintiffs' Federally Registered Trademarks in their marketing, sale and distribution of counterfeit products are diluting the distinctive quality of Plaintiffs' Federally Registered Trademarks and the goodwill associated with them in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(c).

104.    Such conduct has injured Plaintiffs and said injury will continue unless the Court enjoins Defendants from committing further wrongful acts.

105.    Upon information and belief, Defendants intentionally and willfully utilized Plaintiffs' Federally Registered Trademarks and traded on Plaintiffs' reputation and goodwill.

106.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

107.    Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined but believed to be in excess of Two Million Dollars ($2,000,000) per Plaintiff.

### FIFTH CAUSE OF ACTION
### INJURY TO BUSINESS REPUTATION AND DILUTION
### NEW YORK GENERAL BUSINESS LAW § 360-1

108.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

109.    Plaintiffs, on behalf of the general public, as well as for themselves seek recovery from Defendants for violation of New York General Business Law § 360-1, et seq.

110.    By virtue of Defendants' unauthorized use of Plaintiffs' Federally Registered Trademarks, such use trading on the good will associated with Plaintiffs, Defendants have misled

and will continue to mislead the public into assuming a connection between Plaintiffs and Defendants' products.

111.     By falsely suggesting a connection with or sponsorship by Plaintiffs, Defendants are likely to cause public confusion constituting unfair competition within the meaning of New York Business Law § 360-1.

112.     If such action on the part of Defendants continue, Plaintiffs will suffer irreparable harm of a continuing nature for which there is no adequate remedy at law.

113.     Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined but believed to be in excess of One Million Dollars ($1,000,000) per Plaintiff.

114.     Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined but believed to be in excess of One Million Dollars ($1,000,000) per Plaintiff.

**SIXTH CAUSE OF ACTION**
**COMMON LAW TRADEMARK INFRINGEMENT**

115.     Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

116.     Defendants' acts previously alleged herein constitute common law trademark infringement.

117.     Plaintiffs are without adequate remedy at law, as Defendants' acts have caused Plaintiffs irreparable harm to its business reputation, good will and stature in the business community.

118.     Plaintiffs are informed and believe and thereon allege that Defendants committed the above alleged acts oppressively, fraudulently, maliciously and in conscious disregard of Plaintiffs'

rights, and Plaintiffs are therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

119.   The manufacture, distribution and sale of the unauthorized and infringing products by Defendants are without any permission, license or other authorization from Plaintiffs. The said unauthorized products are being distributed and sold in interstate commerce.

120.   Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined but believed to be in excess of One Million Dollars ($1,000,000) per Plaintiff.

121.   Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined but believed to be in excess of One Million Dollars ($1,000,000) per Plaintiff.

**SEVENTH CAUSE OF ACTION**
**MISAPPROPRIATION AND UNFAIR COMPETITION**
**UNDER NEW YORK COMMON LAW**

122.   Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

123.   Defendants' aforesaid acts constitute misappropriation and infringement of Plaintiffs' property rights, goodwill and reputation and unfair competition under the common law of the State of New York.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

I.      That preliminary and permanent injunctions be issued enjoining and restraining Defendants and their officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from:

A.      Using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Federally Registered Trademarks to identify any goods or the rendering of any services not authorized by Plaintiffs;

B.      Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of Plaintiffs' name and Plaintiffs' Federally Registered Trademarks;

C.      Using a false description or representation including words or other symbols tending to falsely describe or represent Defendants' unauthorized goods as being those of Plaintiffs or sponsored by or associated with Plaintiffs and from offering such goods into commerce;

D.      Further infringing Plaintiffs' Federally Registered Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by Plaintiffs bearing any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Federally Registered Trademarks;

E.      Using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Federally Registered Trademarks in connection with the rental, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or

tend to relate or connect, such products in any way to Plaintiffs, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiffs;

F.     Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold or rented by Defendants is in any manner associated or connected with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

G.     Constituting an infringement of any of Plaintiffs' Federally Registered Trademarks or of Plaintiffs' rights in, or to use or to exploit, said Registered Trademarks, or constituting any dilution of Plaintiffs' name, reputation or goodwill;

H.     Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe Plaintiffs' Federally Registered Trademarks;

I.     Selling, offering for sale, or advertising any merchandise bearing Plaintiffs' Federally Registered Trademarks on the Internet or in e-commerce, including but not limited to all forms of social media; and

J.     Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (A) through (I).

II. Directing that Defendants deliver up for destruction to Plaintiffs all unauthorized products and advertisements in their possession or under their control bearing any of Plaintiffs' Federally Registered Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. §1118.

III. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs' products.

IV. Directing Defendants to supply Plaintiffs with the name and address of each person or entity from whom or from which has purchased any item bearing Plaintiffs' Federally Registered Trademarks.

V. Directing Defendants, within thirty (30) days after the service of judgment upon it, with notice of entry thereof, to file with the Court, and serve upon Plaintiffs, a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs I through IV above.

VI. Awarding to Plaintiffs the Defendants' profits from its unlawful acts herein alleged as Defendants' total sales of merchandise bearing any one or more of the Plaintiffs' Federally Registered Trademarks, less any elements of cost or deductions proved by Defendants and allowed by law.

VII. Awarding to Plaintiffs the damages from Defendants' unlawful acts herein alleged.

VIII.      Pursuant to 15 U.S.C. § 1117(a), directing Defendants to pay Plaintiffs all of the profits assessed pursuant to paragraph VI, *supra*, together with three times the amount of damages assessed pursuant to paragraph VII, *supra*, with prejudgment interest on the foregoing sums.

IX.      In the event that the Court determines that Defendants intentionally used a mark knowing that such mark was a counterfeit mark, directing Defendants to pay Plaintiffs:

    A.      Pursuant to 15 U.S.C. § 1117(a) and (b) all of the profits assessed pursuant to paragraph VI, *supra*; plus,

    B.      Pursuant to 15 U.S.C. § 1117(a) and (b) three times the profits assessed pursuant to paragraph VI, *supra*, or three times the damages assessed pursuant to paragraph VII, *supra*,  whichever is greater; and

    C.      Prejudgment interest on the foregoing sums at an annual interest rate established under 26 U.S.C. § 6621(a)(2) commencing as of the sate if the service of the complaint herein.

X.      Ordering that Plaintiffs recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

XI.      Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

XII.     Awarding to Plaintiffs such other and further relief as the Court may deem just and proper, together with the costs and disbursements which Plaintiffs have incurred in connection with this action.

Dated: November 29, 2022
          New York, New York

Respectfully submitted,

BAKER & HOSTETLER LLP

By: _____
Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
Kevin M. Wallace (KW 1284)
45 Rockefeller Plaza
14th Floor
New York, NY 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Plaintiffs*